A97A1441. MORRIS v. THE STATE.
(491 SE2d 190)

BIRDSONG, Presiding Judge.

Appellant Harold Morris appeals his conviction of two counts of aggravated assault, one count of possession of a firearm during the commission of a crime, and one count of misdemeanor theft by taking. Appellant enumerates three errors. *Held*:

1. Appellant contends the trial court erred in denying his new trial motion as the verdict was decidedly against the weight of the evidence. We disagree.

The record unequivocally reveals that the State called as witnesses for the prosecution certain hostile eyewitnesses. After these witnesses testified denying the happening of certain events and claiming loss of memory as to other events, the State introduced various prior inconsistent statements by these witnesses made at the

crime scene. " '(A) prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence, and is not limited in value only to impeachment purposes.' [Cit.] A party may impeach its own witness with a prior inconsistent statement without any showing of entrapment or surprise." *Rollins v. State*, 262 Ga. 698, 699 (1) (425 SE2d 285). "As a general rule, a party may show anything which may, in the slightest degree, affect the credit of an opposing witness. A witness may be impeached by disproving the facts testified to by him. And, while a witness may be impeached on a collateral issue which is indirectly material to the issue in the case, a witness may not be impeached because of a discrepancy as to a wholly immaterial matter. A witness can be impeached as to matters relevant to his testimony and to the case, and by disproving facts testified to by him. And evidence tendered for purposes of impeachment need not be of the kind or quality required for proving the facts in issue." (Citations and punctuation omitted.) *Morris v. State Farm Mut. Auto. Ins. Co.*, 203 Ga. App. 839, 842 (9) (418 SE2d 119). "We are satisfied that [the witnesses were] not impeached as to wholly immaterial matters, but [were] attempted to be impeached as to matters at least indirectly if not directly material as to [their] testimony and to issues in this case." Id. The record does not establish that the trial court abused its discretion in admitting the prior inconsistent statements of the State's witnesses in evidence for purposes of impeachment and, thus, as substantive evidence.

On appeal the evidence must be viewed in the light most favorable to support the verdict, and appellant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. *Grant v. State*, 195 Ga. App. 463, 464 (1) (393 SE2d 737). Review of the transcript reveals ample evidence from which any rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of the offenses of which he was found guilty. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

2. Appellant contends the trial court erred in allowing hearsay testimony in evidence. Specifically, appellant argues on appeal that the trial court erred in allowing Officer Jones to testify, over a timely hearsay objection, as to out-of-court statements made by William Johnson that he had hidden in a closet while appellant fired shots through the wall and closet door. The trial court overruled the objection on the basis that the testimony constituted a res gestae exception to the hearsay rule. In determining whether to admit testimony as res gestae evidence, a trial court must determine whether the declaration was undeniably free from all suspicion of device or afterthought. *Wilbourne v. State*, 214 Ga. App. 371, 372 (448 SE2d 37).

The applicable standard of appellate review is whether the trial court's ruling admitting this evidence was clearly erroneous. *Robinson v. State*, 197 Ga. App. 600, 601 (2) (399 SE2d 94). In resolving this issue an appellate court must determine whether, under the existing circumstances of the particular case, the trial court was authorized to believe the declarations were made without premeditation or artifice, and without a view to the consequences. *Wilbourne*, supra at 372 (1).

Officer Jones, responding to dispatch, arrived at the crime scene and found several subjects in the yard; "everybody was all upset." Officer Jones spoke with two male subjects in the yard who stated "Mr. Willis [sic]" (this slip of the tongue was later clarified to reflect that Officer Jones was referring to appellant Morris when he was using the name Willis) had "gone crazy" and was shooting in the house. Officer Jones next spoke with Ms. Morris, appellant's niece, who made various statements to him regarding appellant's criminal conduct that evening. At this point, Mr. Johnson came out of the house voluntarily and met Officer Jones in the yard. Mr. Johnson was "very upset and acted very scared"; he was shaking and his "voice was quivering" as he related what had happened. While laboring under this emotional condition, Mr. Johnson "advised" Officer Jones that appellant had returned to the living room area and threatened him. Mr. Johnson "ran into the bedroom area" and hid in the corner closet. Mr. Johnson recounted that appellant then shot at the closet doors and the bedroom wall. Although he did not find any projectiles or shell casings, Officer Jones did personally observe two small holes — one in the closet door and another in the bedroom door leading from the dining room into the bedroom. He could not determine whether the holes were bullet holes or how long they had been there; but based on his prior observations of bullet holes in wood, he testified without objection that the holes in the doors appeared to look similar to those bullet holes and could possibly be bullet holes too.

OCGA § 24-3-3 provides: "Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae." Classic res gestae evidence usually is contemporaneous to the act; however, the length of time between the event and the declaration is not conclusive to the determination of admissibility. Id. Rather, res gestae is admitted based on its nature and quality as being so spontaneous, or so connected to or prompted by the startling act or event at issue, as to be inherently reliable. See OCGA § 24-3-3. From the state of the trial transcript, the trial court could reasonably find that Mr. Johnson exited the house and voluntarily and spontaneously informed Officer Jones of appellant's threats and firing of the weapon. Even if the statements were made in answer to a question

by Officer Jones, a fact not established by the record, such "fact alone will not render them inadmissible." *Thomas v. State*, 242 Ga. 712, 714 (1) (251 SE2d 294).

This case is factually distinguishable from *Wilbourne*, supra, as there is no evidence in this record that Mr. Johnson had time to sit awaiting the police and to formulate a biased account of this startling event. The res gestae statements admitted in evidence reveal that Mr. Johnson had sought refuge in a closet to hide from danger and that appellant had fired a shot in the closet door. Officer Jones' personal observation of the holes in the doors tended partially to corroborate a material part of Mr. Johnson's utterances. The trial court reasonably could infer from the officer's testimony regarding the location of the holes that they were made from a pistol shot fired by appellant, as such event was recounted in the voluntary statement of Mr. Johnson. Mr. Johnson was still laboring under the effects of the startling event at the time he made his statements. The trial court could reasonably conclude from Officer Jones' testimony regarding Mr. Johnson's physical characteristics and emotional state at the time the statements were made that Mr. Johnson did not deliberate and did not formulate a biased version of the incident he had witnessed. Appellant has failed under the totality of the attendant circumstances to show that the trial court's ruling, admitting the statement of Mr. Johnson as res gestae, was clearly erroneous and a breach of its discretion. Compare *Thomas*, supra.

3. Appellant further enumerates that the trial court erred in not giving his requested charge of reckless conduct, as the evidence required such charge. See generally OCGA § 16-5-60. Appellant's sole argument in support of this enumeration is that the lesser included offense of reckless conduct was raised by the State's theory that appellant pointed and waved a firearm toward individuals. Appellant was convicted of two aggravated assaults upon Sophia Morris by pointing a firearm (handgun) at her and threatening to kill her and by pointing a firearm (handgun) at her and firing said firearm, respectively. As recognized by the trial court, the evidence of record failed to reasonably raise the lesser included offense of reckless conduct. The posture of the evidence is that appellant either was guilty of these two offenses of aggravated assault, as averred, or was not guilty of any crime under these particular indictment counts. "Accordingly, it was not error to refuse to give the requested charge on reckless conduct as a lesser included offense." *Perryman v. State*, 208 Ga. App. 754, 756 (3) (431 SE2d 742); see *Marion v. State*, 224 Ga. App. 413, 416 (2) (480 SE2d 869); *Tolbert v. State*, 215 Ga. App. 113 (1) (449 SE2d 671).

*Judgment affirmed. Ruffin and Eldridge, JJ., concur.*

DECIDED AUGUST 11, 1997.

*Neel & Smith, Barry S. Haney*, for appellant.
*T. Joseph Campbell, District Attorney, Lance T. McCoy, Assistant District Attorney*, for appellee.