308 Ga. 537
FINAL COPY

S20A0247.  TURNER v. THE STATE.

WARREN, Justice.

Appellant Ronald Turner appeals from his conviction for malice murder stemming from the stabbing death of William King.[1] Turner contends that he was denied the effective assistance of counsel in three respects.  We see no error and affirm.

1.  Viewed in the light most favorable to the verdict, the evidence at trial showed that on the night of December 3, 2009, Corey Wallace, William Yates, and William King drove in King's car to the apartment complex in which Gloria Jones, a friend of Wallace,

---

[1] King was killed on December 3, 2009.  On July 27, 2010, a Bibb County grand jury indicted Turner for malice murder, felony murder, and aggravated assault.  On September 26, 2013, a jury found Turner guilty on all counts.  On October 1, 2013, the trial court sentenced Turner to life in prison without parole for malice murder.  The felony murder count was vacated by operation of law, and the aggravated assault count was merged for sentencing purposes.  On October 3, 2013, Turner filed a motion for new trial, which he amended through new counsel on December 5 and 10, 2018.  On January 9, 2019, the trial court denied the motion for new trial, as amended.  Turner filed a timely notice of appeal on February 8, 2019.  The case was docketed in this Court for the term beginning in December 2019 and submitted for a decision on the briefs.

lived. At about the same time as Wallace's group arrived at the apartment complex, Turner arrived with Liticia Padgett and Gregory Bower. Turner had stolen some food from his girlfriend's apartment and then driven to the apartment complex in which Jones lived to attempt to exchange food for cocaine. According to Wallace's trial testimony, when his group arrived, Wallace went inside the apartment to get Jones. Yates testified that he got out of the car and sat on a bench on the side of the apartment building. Yates added that he saw King get out of his car and walk away from it, but that Yates could not see King after that point because bushes blocked his view. When Wallace came outside a few minutes later and he and Yates walked toward King's car, they saw that Turner's truck was parked next to King's car. Wallace and Yates testified that King, who was unarmed, was holding his stomach and said that Turner had stabbed him. Wallace threw a bottle at Turner, who was holding a knife in his hand. King collapsed and died from a stab wound to the lower chest. Turner and Bower jumped in Turner's truck and fled the scene, leaving Padgett behind. Padgett cooperated

with law enforcement officers and took them to Turner's home.  The police found Turner there and arrested him.

In a phone call that Turner made to his girlfriend from jail, he told her that he was guilty, that he killed King, and that he would do so again.  Turner also wrote a letter to a friend, Lance Vannortwick, on December 10, 2010, saying that the State has only "one witness[,] [a] female.  She is the crack whore who was with me that nite [sic]."  Turner added that he left the woman "at the scene of the murder/death," and that she needed "to be stopped from testifying" and "to either disappear or take a long vacation."  Turner added that he had "to get this matter taken care of permanently."[2]

Wilbur Walton, who was in jail at the same time as Turner in 2012, testified that Turner told him that Turner went to the apartment complex with Padgett and Bower to trade food for drugs; that he saw King at the apartment; that he and King previously had disagreements and began arguing; and that Turner hit King. Turner added that King was pulling on his jacket and that Turner

---

[2] Turner underlined the word "permanently."

"decided he was going to kill this n***** then." According to Walton, Turner "said he turned around and pulled out a knife. And while [King] had his jacket in his hand[,] [Turner] turned around and stabbed him." Walton also testified that Turner told him that he had been arrested because Padgett had "snitched on him" and that he did not want Padgett to testify against him. Turner asked Walton if he knew "somebody that would be willing to kill [Padgett]." Turner eventually asked Walton to kill Padgett for $25,000, telling Walton where he could find Padgett, that she liked drugs, and that he could kill her by giving her an overdose.

Turner testified in his own defense at trial and claimed that King hit him in the head with a beer bottle because Turner owed money to King from a prior drug transaction. Turner testified that he tried to get away from King, but that King chased him down and grabbed his jacket. According to Turner, King was getting ready to hit him again when Turner stabbed King in self-defense.

Turner does not challenge the sufficiency of the evidence. Nevertheless, consistent with this Court's general practice in

murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdict, the evidence presented at trial was sufficient to authorize a rational jury to find beyond a reasonable doubt that Turner was guilty of the crime for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Turner raises three claims of ineffective assistance of counsel during his trial. We conclude that his claims are without merit.

To prevail on a claim of ineffective assistance of counsel, a defendant generally must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant. *Strickland v. Washington,* 466 U. S. 668, 687-696 (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (689 SE2d 280) (2010). To satisfy the deficiency prong, a defendant must demonstrate that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*,

293 Ga. 339, 344 (745 SE2d 637) (2013); see also *Strickland*, 466 U. S. at 687-688. To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. *Strickland*, 466 U. S. at 694. "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Lawrence v. State*, 286 Ga. 533, 533-534 (690 SE2d 801) (2010).

(a) Turner argues that his trial counsel provided constitutionally ineffective assistance by failing to remind the trial court that it had said that it would instruct the jury that it had stricken the testimony of the State's handwriting expert and that the jury should disregard that testimony.

At trial, the State initially attempted to enter into evidence the letter that Turner wrote to Vannortwick by offering authentication testimony from a handwriting expert who compared the letter with writings that a law enforcement officer testified he had taken from Turner's jail cell; the expert testified that the letter and comparison

writing samples were written by the same person. However, before the expert could testify regarding the content of the letter or the samples, and before either was admitted into evidence, Turner's counsel objected to any further testimony from the expert on the ground that the State could not establish that the writing samples, in fact, came from Turner's cell. The trial court sent the jury home for the night, and after a lengthy discussion, sustained defense counsel's objection. The trial court also stated that when court reconvened again the next morning, the court would instruct the jury to disregard the handwriting expert's testimony. However, the trial court did not provide that instruction, and trial counsel did not remind the court to do so. Ultimately, the State introduced the letter into evidence after the trial court ruled that the letter could be authenticated because the letter stated that Turner was the sender and contained facts that only Turner and a few other people would know.

Even assuming that trial counsel performed deficiently by not reminding the trial court about the instruction it said it would give

to the jury, we conclude that Turner has failed to show prejudice on this claim. That is because the letter was not admitted into evidence based on the expert's testimony; the expert did not read the letter to the jury; the handwriting samples on which the expert relied were not introduced into evidence; and the content of the handwriting samples was not discussed before the jury. Thus, the expert's testimony was of minimal value to the State — especially given that the State separately authenticated the letter as having been written by Turner without the aid of its expert, and Turner does not challenge that authentication on appeal. Moreover, the evidence of Turner's guilt was strong. Specifically, the State presented evidence that Turner made statements to his girlfriend and to Walton about killing King and that Turner told Walton he wanted to kill Padgett and told Vannortwick that he wanted to "permanently" prevent Padgett from testifying against him. The State also presented evidence that King was unarmed. Accordingly, even if trial counsel had reminded the court to instruct the jury to disregard the expert's testimony that the letter and the handwriting samples had been

prepared by the same person and the trial court had done so, Turner has failed to establish that there is a reasonable probability that the outcome of the trial would have been different. See *Starks v. State*, 304 Ga. 308, 312 (818 SE2d 507) (2018) (concluding that appellant could not establish the prejudice required to show ineffective assistance in light of overwhelming evidence of guilt). This claim of ineffective assistance of counsel therefore fails.

(b) Turner claims that the prosecutor agreed to redact from the Vannortwick letter any reference to Turner's and King's memberships in different street gangs and that trial counsel was ineffective in failing to ensure that those redactions were made.

The record shows that the letter was admitted into evidence without any redactions and that trial counsel did not seek to have redactions of references to street gangs made. Even assuming that the prosecutor did agree to redact the letter, we conclude that trial counsel's failure to ensure that the redactions were made was not prejudicial to Turner. First, the evidence of Turner's guilt was strong. Moreover, the State did not offer evidence at trial that the

crime was gang-related, the State's theory of the case did not relate to gang activity, and the State did not rely on gang activity in its argument to the jury. As a result, Turner has not shown that, but for trial counsel's failure to ensure the gang references in the letter were redacted, there is a reasonable probability that the outcome of his trial would have been different. See *Mohamed v. State*, 307 Ga. 89, 92-93, 94 (834 SE2d 762) (2019) (holding that the defendant failed to show prejudice on his claim that trial counsel was ineffective in failing to object to testimony of gang activity because "there was no evidence showing either that the crime was gang-related or that the defendants were motivated to participate in the crime by virtue of shared group membership," because the "prosecution made no reference to such a theory either in its opening statement or closing argument," and because of "other strong evidence against [the defendant]").

(c) Turner next claims that trial counsel provided ineffective assistance by failing to inform him of a misstatement by the trial court regarding sentencing. We disagree that trial counsel was

constitutionally ineffective.

The record shows that, at the beginning of trial, the trial court informed Turner that the maximum sentence Turner faced was life in prison with the possibility of parole in 30 years, when, in fact, the trial court had the discretion — which it exercised after the jury returned a guilty verdict — to sentence Turner to a maximum sentence of life in prison without parole.[3]  On appeal, Turner argues that if he had known that he faced a possible sentence of life without parole, he would have pled guilty to murder in exchange for a sentence of life with parole, and that his trial counsel therefore provided constitutionally ineffective assistance by failing to correct the trial court.  But even assuming that trial counsel performed deficiently in failing to inform Turner that the trial court was incorrect, Turner's contention fails because he has not shown prejudice.

---

[3] Turner killed King on December 3, 2009, and "[i]n 2009, the General Assembly amended the murder statute, OCGA § 16-5-1, to authorize a sentence of life without parole for all murders committed on or after April 29, 2009." *Kimbrough v. State*, 300 Ga. 516, 518 n.5 (796 SE2d 694) (2017).

To prevail on the prejudice component of his ineffectiveness claim, Turner "must show the outcome of the plea process would have been different" if his trial counsel had corrected the misinformation the trial court provided about parole. *Jacobs v. State*, 306 Ga. 571, 574 (832 SE2d 363) (2019) (citation and punctuation omitted). In particular, Turner must show that, but for trial counsel's failure to correct the trial court,

> [1] . . . there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), [2] that the court would have accepted its terms, and [3] that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Jacobs*, 306 Ga. at 574 (citation and punctuation omitted).

To begin, we note that the trial court misinformed Turner about his maximum sentence not during a plea discussion but during a colloquy in which the court was explaining several issues to Turner, including Turner's right to testify. The trial record, in fact, does not contain any mention of plea negotiations. Moreover,

at the motion for new trial hearing, although trial counsel testified that he did not "remember anything offered that was less than life or life without" and that he did not "recall anything about any plea offer being made that involved any plea to less than murder," trial counsel also testified that Turner was never interested in pleading guilty to murder. In addition, Turner did not testify at the motion for new trial hearing and thus did not offer his own direct evidence about whether he would have accepted a plea to life with the possibility of parole for murder if he had been advised by counsel that there was a possibility of receiving a sentence of life without parole if he were found guilty. In an attempt to bridge this gap in the evidence, Turner argues that the fact that the defense did not object to the court's jury charge on voluntary manslaughter shows that Turner was willing to accept a disposition of the case other than acquittal, thus making it "plausible he might have decided to plead guilty in exchange for a life sentence with the possibility of parole." However, failing to object to a jury charge on voluntary manslaughter does not amount to evidence that Turner would have

been willing to plead guilty to murder and accept a sentence of life with the possibility of parole.

Under these circumstances, we conclude that the trial court did not err in concluding that Turner failed to show that there was a reasonable probability that he would have pled guilty to murder if he had been aware that he could be sentenced to life without parole. See *Jacobs*, 306 Ga. at 574. Accordingly, this claim of ineffective assistance of counsel fails.

(d) Finally, we conclude that the cumulative prejudice from the deficiencies assumed in Division 2 (a), (b), and (c) does not create a reasonable probability that the result of the proceedings would have been different in the absence of the deficiencies alleged. See *Jackson v. State*, 306 Ga. 69, 90 (829 SE2d 142) (2019) (recognizing that "the effect of prejudice resulting from counsel's deficient performance is viewed cumulatively") (citation and punctuation omitted).

*Judgment affirmed. All the Justices concur.*

Decided April 20, 2020.
Murder. Bibb Superior Court. Before Judge Ennis.
*David J. Walker*, for appellant.
*K. David Cooke, Jr., District Attorney, Dorothy V. Hull, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Leslie A. Coots, Assistant Attorney General*, for appellee.